IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-02176-RBJ-KMT

LEON JAIMES,

    Plaintiff,

v.

LIBERTY INSURANCE CORPORATION,

    Defendant

---

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on defendant, Liberty Insurance Corporation (Liberty)'s motion for summary judgment. ECF No. 26. For the reasons stated herein, the defendant's motion is GRANTED.

## I.     BACKGROUND

Plaintiff, Leon K. Jaimes, is the owner of the real property and house located at 3027 Marion Street, Denver, CO 80205. ECF No. 4 at ¶6. He carried Liberty homeowner's insurance on that property. *Id.* at ¶7. Mr. Jaimes is a citizen and resident of Alaska, and he rented this property to tenants. *Id.* at ¶1, 10. This case arises out of Liberty's denial of coverage for Mr. Jaimes's two property insurance claims for cracking and bulging of an exterior wall of that property ("first claim") and the subsequent collapse of that wall ("second claim").

On August 28, 2015 Mr. Jaimes learned of a crack in the south wall of his home when a local friend who assisted him in managing the property told him about the issue and sent pictures of the wall to him. ECF No. 26 at 4; ECF No. 27 at 2. On September 1, 2015 Mr. Jaimes hired

1

Anchor Engineering, which sent Stephen McSpadden to the property to perform a site observation. ECF No. 26-4 (McSpadden letter). Mr. McSpadden "assess[ed] the foundation, interior floor of the main level and the south masonry bearing wall." *Id.* He observed "a major bulge in the south wall of the main level," noting that "[t]he bulge in the south wall is so severe that the wall is actually broken under the stairway and there is a major separation between the exterior wall and interior walls." *Id.* He also noted several problems with deterioration in different aspects of the basement. *Id.* The letter conveyed that the "structure of the house is regarded as unstable and dangerous" and made recommendations for repair.

On September 22, 2015, Mr. Jaimes filed a claim with Liberty, seeking coverage under the policy. Liberty denied this claim, stating that the damage to the south brick wall was not covered under the policy because it "was a result of deterioration of the wall and possibly also a result of settling." Liberty stated that Mr. Jaimes's homeowner's policy does not cover "wear and tear or deterioration of materials; or settling of walls, floors or roofs." ECF No. 4 at ¶16.

After this denial, Mr. Jaimes obtained bids to repair the house and investigated other options, including demolishing the house and building a new one. *Id.* at ¶18. On November 17, 2015, while Mr. Jaimes was in the process of finding a solution, the south wall of his home collapsed. *Id.* at ¶19. Mr. Jaimes submitted a second claim with Liberty seeking coverage under the policy. *Id.* at 20. The next day, the City and County of Denver ("the City") issued an emergency demolition order because the structure was unsafe, and because the gas meter had been damaged when the house collapsed. *Id.* at 21.

After Mr. Jaimes filed the second claim, Liberty retained a professional engineer, Mark Orr with EFI Global, who inspected the property. ECF No. 26 at 6. EFI Global issued a report that, like the McSpadden letter, observed deterioration of floor joists, a wood bearing plate, and

2

mortar. ECF No. 26-10. Liberty also denied this claim. Liberty asserted that the collapse was not covered because it "was the result of deterioration of the wall, settling of the home, failure to protect the property from further damage." ECF No. 4 at ¶24, ECF No 26-10. Liberty stated that the policy does not cover "wear and tear, marring, deterioration, settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings." *Id.* Between November 2015 and February 2016 the City demolished Mr. Jaimes's house and removed it from the property. Complaint at ¶27.

Mr. Jaimes filed suit against Liberty raising three claims: (1) breach of contract; (2) bad faith breach of contract; and (3) violation of Colo. Rev. Stat. §§10-3-1115; 1116. Mr. Jaimes asserts that the collapse of the south wall of his home was due to "hidden decay" and is therefore covered under the following policy language:

> **Section I – Perils Insured Against.** We insure against risk of direct loss to property described in coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:
>
> 1. Involving collapse, other than as provided in Additional Coverage 8.;
> 2. Caused by: . . .
>     e. Any of the following:
>         (1) Wear and tear, marring, deterioration; . . .
>         (6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings….
>
> **Additional Coverage 8. Collapse.** *We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:* . . .
>     *b. Hidden decay;* . . .
> Collapse does not include settling, cracking, shrinking, bulging or expansion.

ECF No. 26, Ex. A at 10-11 (emphasis added).

3

Defendant filed a motion for summary judgment, ECF No. 26, plaintiff filed a response, ECF No. 27, and defendant filed a reply, ECF No. 28.  The Court held oral argument on October 25, 2018.  This motion has been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  A dispute about a fact is material "if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The Court will examine the factual record and make reasonable inferences there in the light most favorable to the party opposing summary judgment.  *Concrete Works of Colo., Inc*. v. *City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## III. ANALYSIS

### A.  The First Claim: The Cracked Wall

Liberty argues that when Mr. Jaimes filed his first claim, no wall had collapsed, and no other potential provision provides coverage for this cracked wall.  In its denial letter for this first claim, Liberty referred to provisions stating that its policy excludes bulging and cracking of walls and deterioration.  ECF No. 26, Ex. H.  In its motion for summary judgment Liberty states

that because there was no collapse, this first claim is also not covered under the provision that provides for coverage in the event of collapse due to hidden decay. ECF No. 26 at 13.

Mr. Jaimes argues that Liberty did not state in its denial letter that Mr. Jaimes's cracked wall was not a collapse due to hidden decay, and therefore it waived the right to now say the first claim is not covered as a collapse. I am not persuaded. There was no collapse yet, and plaintiff had not asserted that the collapse coverage applied. Liberty based its denial on what it knew at that time. It would not be reasonable to expect an insurer to anticipate bases for denial that might arise if future events occur. A ruling to that effect might motivate insurers to expand denial and reservation of rights letters that some might already view as bloated. The contract speaks for itself as to what is covered and what is not, and only when it is clear that an insurer or an insured has intentionally waived a known contractual right would the Court find that a waiver had occurred.

Mr. Jaimes further argues that the cracking wall is "subsumed" into his second claim and should be covered as a collapse from hidden decay. He argues that "the same physical forces – hidden decay in the floor joists and sill plates – caused both claims" so that he should also get coverage for the first claim if the second claim was a collapse due to hidden decay. ECF No. 27 at 7. This makes better sense. Assuming without deciding that the first claim can be "subsumed" in this way, the remaining issue is whether the collapse is covered, to which I turn next.

### B. The Second Claim: The Collapse

The Liberty policy limits coverage for collapses to those caused only by six specifically enumerated causes. The cause applicable here is "hidden decay." The Liberty policy does not define the word "hidden" or the term "hidden decay" in the collapse coverage sections. ECF No.

26 at 14. There is no Colorado case on point, but other courts construing similar provisions have determined that for decay to be "hidden," it is not enough for the insured simply to assert that he was unaware of the decay. Instead, an objective test is applied, i.e., whether a reasonable insured would have been aware of the decay. *S.R.P. Mgmt. Corp. v. Seneca Ins. Co.*, No. CIV. A. 06-935, 2008 WL 2039466, at *8 (E.D. Pa. May 13, 2008); *Sandalwood Condo. Ass'n at Wildwood, Inc. v. Allstate Ins. Co.*, 294 F. Supp. 2d 1315, 1319 (M.D. Fla. 2003). An insured is not required affirmatively to inspect premises to uncover otherwise hidden decay, but he also cannot refuse "to draw those conclusions a reasonable insured would draw" when he has information indicating the existence of decay. 2008 WL 2039466, at *8.

Mr. Jaimes asserts that the decay was unknown to him prior to the collapse. ECF No. 27 at 7. I will assume the truth of that assertion for present purposes. Based upon the information conveyed in the McSpadden letter, however, I cannot find that his lack of knowledge was objectively reasonable. There are several statements in the letter that would put a reasonable homeowner on notice that there was decay in the home. According to the letter, the primary purpose of Mr. McSpadden's inspection was to "assess the foundation, interior floor of the main level and the south masonry bearing wall." ECF No. 26-4 at 1. In relation to the foundation, the report notes "Upon entering the basement several problems were noted. Around the perimeter the wood bearing plate, in the foundation wall, has deteriorated and is allowing the floor joist ends to settle. A number of floor joist ends have deteriorated and are no longer bearing on the foundation." *Id.* It continues that "the mortar deterioration is severe and has fallen out of the joints in a majority of locations." In his response to one of defendant's discovery questions, plaintiff admitted that he read the McSpadden letter by September 30, 2015. Jaimes Responses to Defendant's Discovery at 3.

6

In his deposition, Mr. McSpadden stated that the terms "decay" and "deterioration" are interchangeable to him. Perhaps a homeowner could understand deterioration to be different from decay. The policy itself distinguishes between "deterioration" and "hidden decay." However, at the hearing on the motion for summary judgment, plaintiff and defense counsel agreed that the parties understood decay and deterioration to be interchangeable terms. Accordingly, there is no genuine dispute about the fact that Mr. McSpadden communicated to Mr. Jaimes that there was decay around the wood bearing plate in the foundation wall and in floor joists. Because the purpose of his evaluation was to "assess the foundation, interior floor of the main level and the south masonry bearing wall," Mr. Jaimes reasonably should have understood that the decay Mr. McSpadden observed was related to his evaluation of the south wall – the wall that eventually collapsed.

The EFI report, completed after the collapse, does a more thorough analysis of the house, but it still identifies these same problems as sources of the collapse. The report states that "deterioration of the floor joists caused by long term exposure to moisture," "deterioration (or rot) of the wood framing members," and "normal age deterioration of the brick walls due to a lack of proper maintenance throughout the life of the structure" all contributed to the partial collapse of the south wall of the structure. ECF 26-10 at 9. It further states:

> The floor joists are bearing in pockets in the brick foundation walls at the south and north sides of the structure. Severe deterioration of the wood joists may have caused downward movement of the floor framing assembly to occur over time. This may have resulted in an outward pressure causing the observed bulge in the brick wall at the south side of the structure.

*Id.* at 8. The report notes that "[d]eterioration (or rot) of the floor joists was observed at multiple locations along the south wall of the structure, at the southwest corner where the wall did not

7

collapse," and that "[d]eterioration (or rot) of the floor joists and bearing plate were observed at multiple locations along the north wall of the structure." *Id.* at 7.

Mr. McSpadden's inspection similarly involved examining the south wall, and he also identified deterioration and problems with the floor joists. Although the McSpadden letter does not indicate whether the deterioration he observed was south, north, or all over the house, the purpose of his investigation was to "assess . . . the south masonry bearing wall," which presumably means he was looking for deterioration in places that would influence the south wall. Mr. McSpadden's investigation was not intended to be as thorough as the EFI analysis. He nonetheless identified the same fundamental problems -- deterioration in the wood bearing plate around the foundation wall and deterioration of floor joists, causing them to no longer bear on the foundation. ECF No. 26-4 at 1.

In sum, Mr. Jaimes hired an engineer to evaluate the wall that eventually collapsed. The engineer's letter report discussed deterioration in this area of the home. Because deterioration and decay are considered by the parties and the experts to be synonymous, Mr. Jaimes reasonably should have known of the decay before the collapse occurred. Therefore, the collapse was not caused by "hidden decay," and there is no coverage under the terms of the insurance policy. On these facts, because the breach of contract claim fails, the extra-contractual claims (two and three) also fail. *Markwest Hydrocarbon, Inc. v. Liberty Mutual Ins. Co.*, 558 F.3d 1184, 1192 (10th Cir. 2009).

**ORDER**

For the reasons set forth above, the Court GRANTS Liberty's motion for summary judgment [ECF No. 26].

DATED this 21st day of November, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge